FILED

NOV 23 2004
ARLEN B. ~~~ CLERK
By ~~~~~~
Deputy

RECEIVED
U.S. DISTRICT COURT
2004 NOV 23
NORTHERN DISTRICT
OF MISSISSIPPI

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

WILLIE JONES, ROBERT JONES
(DUAL POWER OF ATTORNEY FOR IRENE JONES)
IRENE JONES

3:04CV211-MA

V

DJI MORTGAGE CAPITAL , INC ( assignee of Diversified Capital Corporation of TN)
DIVERSIFIED  CAPITAL CORPORATION OF TENNESSEE
HOME LAND TITLE ( Trustee of Diversified Capital Corporation of Tennessee)
BANK OF HOLLY SPRINGS
MID-SOUTH MORTGAGE
LAWRENCE AUTRY
ANN MAYS
THE MONEY STORE D/B/A GREENTREE

## VERIFIED COMPLAINT WITH EXHIBITS

### INTRODUCTION

1.  This is a complaint to set aside the foreclosure of the property identified herein and for damages, as a result of fraud and conspiracy.

### JURISDICTION

2.  Jurisdiction is conferred by 28 USCS 1331 and  15 USCS Section 1964 and applicable principles of supplemental jurisdiction under 28 USC Section 1367(a).

1

VENUE

3.  Venue is conferred pursuant to 28 USCS 1391 in the Northern District of Mississippi.

**PARTIES**

4.  **Willie Jones and Robert Jones** are the sons of Irene Jones and have been assigned a power of attorney to bring this action.

5.  **Irene Jones** is the owner of property described as follows: 1224 Old Hernando Road, Holly Springs, Mississippi and more particularly described as follows:

Commencing at the South east corner of Section 35, Township 3 South, Range 3 West, and run thence south 85 degrees West along an old wire fence 903 feet to a point on the North Row of Old Hernando Road, run thence northwestwardly along said Row 1,350 feet to the point of beginning. Run thence North 29 degrees     2,049 feet to an iron pin; run thence North 85 degrees East along old wire fence 255 feet to an iron pin on the South Row of new US Highway 78; thence South 45 degrees east along said Row 530 feet to an iron pin; thence 40 degrees 30 degrees West 2, 051 feet to an iron pin on the North Row 30;West 2, 051 feet to an iron pin on the North Row of Old Hernando Road; run thence Northwestwardly of Old Hernando Road, thence Northwestwardly of Old

Hernando Road along said ROW 310 feet to the point of beginning in Section 35, Township 3 south, Range 3 West

LESS AND EXCEPT:

Arthur L. Brown and wife, Martha B. Brown tract, recorded in Book 154 at page 44 of the land records of Marshall County, MS and dated the 2nd day of December, 1977; being a one (1) more tract; (b) Curtis Oliver and wife, Laverne Oliver tract, recorded in Land Deed Book NO. 170 at page 281, dated the 2nd day of January, 1979, and being a one(1) acre tract; (c) John Edward DeBerry tract, recorded in Land Deed Book NO. 180 at page 530, dated the 3rd day of July, 1979, and being 2.0 ____, more or less; (d) John Sinn, Jr. tract, recorded in land deed book NO. 181 at page 6, dated the 27th day of March 1991.

7. **DJI Mortgage Company** is the current holder of the deed and trust originally executed to Diversified Capital Corporation of Tennessee. Service of process may be executed upon their agent for service of process.

8. **Diversified Capital Corporation** is a Tennessee corporation doing business in the State of Mississippi. They were the original holder of the deed of trust and deed of trust note originally executed by the plaintiff, Irene Jones on September 12, 2000, securing payment in the principal sum of $49,875.00. Service of process may be had upon their agent.

3

**9. Home Land Title** was the trustee for Diversified Capital Corporation when the deed of trust was initially recorded. Service of process is upon their agent for service of process.

**10. Bank of Holly Springs** is a banking corporation who originally held the indebtedness of $43,0000.00 dollars subsequently. Service of process is upon their agent for service of process.

**11. Mid South Mortgage** was the broker of the loan to Diversified Capital Corporation of Tennessee. Service of process is upon the agent for service of process.

**12. Laurence Autry** was the co-signer on the loan made to Bank of Holly Springs in the amount of $49,875.00. He was also the appraiser of the property when it was refinanced by Diversified Capital Corporation.

**13. Ann Mays** was the owner of Mid South Mortgage Company as well as the one who processed the construction loan from Bank of Holly Springs. Service of process may be had upon her at her regular place of business.

**14. The Money Store** d/b/a was a financial entity that was sued for truth and lending violations. They prepared a deed of trust for an Irene Jones ( not the

plaintiff) and wrongfully used her property as collateral. Service of process may be had upon their agent for service of process.

**15. Attorney Mark Hutchinson** was one of the attorneys who sued the money store and instructed the plaintiff, Irene Jones to cease from paying her mortgage based upon the settlement. Service of process may be had upon him at his regular place of business.

FACTS

16. Irene Jones is an African American woman. Several years prior to the facts herein alleged she suffered an aneurysm which affected her cognitive skill in understanding, interpreting, analyzing , reading and comprehension. As a result of the damage to the brain, her effect is considerable slow and perceptually is borderline mental retardation, if not retardation.

17. In 1992, she was deeded under a special warranty deed, approximately 24. 7 acres more or less located in Marshall County, Mississippi. The land is flat land with rolling timber land. Situated on the acreage is the home of Irene Jones.

18. Due to her disability, and lack of nearby family members able to transact business, Irene Jones became the victim of fraud and deceit from various persons from 1996 through the present to take her land without fair market value.

5

19. On 10/22/96, she allowed Auto Place Inc. to take a lien against the full value of her property to secure the purchase of an automobile that cost approximately $2,000.00.

20. In 1998, Nationwide Ext Remodelers and the Money Store took a lien against the property of Irene Jones for another individual whose name was Irene Jones with a different Social Security number. No money was every forwarded to the plaintiff, Irene Jones, as a result of the transaction entered into by the Money Store, despite the collateralization without her authorization and knowledge.

21. Starting in 1999, Ann Mays, Laurence Autry and MidSouth Mortgage convinced the plaintiff to remodel her home by taking out a loan with the Bank of Holly Springs. Laurence Autry signed on as a co-signer. There were a total of six promissory notes totally approximately 43,000.00.

22. The Bank of Holly Springs made successive loans in the name of Irene Jones for which they delivered checks made payable only to Laurence Autry. The plaintiff asserts that she does not remember signing the successive promissory notes encumbering her property, yet a signature is affixed to the documents for which the plaintiff demands strict proof of her signature. She received no more than $500.00 from the transactions ( as cash) with Bank of Holly Springs.

23. The work performed on the home was of extremely poor workmanship and in no way justified the expense of $43,000.00. The craftsmen quit the job based

6

upon the fact that they had not been given proper money to complete the job and that she was being defrauded.

24. Thereafter Ann Mays, Laurence Autry and Mid-South Mortgage devised a scheme to refinance the loan to Bank of Holly Springs. Ann Mays and Mid South Mortgage functioned in the capacity as broker while Laurence Autry functioned as appraiser.

25. 25 acres was refinanced to Diversified Capital Corporation on or about September 12, 2000 for only $49,875.00. Diversified Capital Corporation paid to Mid-South Mortgage and Ann Mays for this transaction approximately $1200.00 while tendering to Laurence Autry ( the prior co-signer on the loan and appraiser of the property and additional $600.00.

28. For close to three years, the plaintiff paid the mortgage payments to Diversified Capital Corporation. Then sometime in early 2003, the plaintiff received a communication from Attorney Mark Hutchinson, instructing her to travel to Hattiesburg, Mississippi to pick up her settlement check. In the meantime, the plaintiff was instructed to cease making any further mortgage payments.

29. When the plaintiff arrived in Hattiesburg, she was not given any settlement check and was told that someone would visit with her in Holly Springs. The plaintiff relying upon the instructions failed to make her mortgage payments.

30.  On August 8, 2003, Diversified Capital Corporation sold the property at a foreclosure sale at the Marshall County Courthouse for $59,331.41 to DLJ Mortgage Capital, Inc.

## CAUSE OF ACTION

## RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT

## 18 U.S.C.S. 1962 c

## AN ASSOCIATION IN FACT FOR THE PURPOSES OF

## RACKETEERING AND DEFRAUDING

31.  The plaintiffs restate paragraphs 1- as if fully copied herein.

32.  At all relevant times, Irene Jones was a person within the meaning of RICO  18 U,S,C,S, 1961(3) and 1964 .

33.  At all relevant times, defendants,  DJI Mortgage Capital , Inc. Diversified Capital Corporation of Tennessee;  Home Land Title; Bank of Holly Springs, Mid-South Mortgage, Laurence Autry, Ann Mays, Mid-South Mortgage and  The Money Store d/b/a/ Greentree  were person within the meaning RICO, 18 U.S.C.S. 1962(a).

34.  That ,  DJI Mortgage Capital , Inc. Diversified Capital Corporation of Tennessee;  Home Land Title; Bank of Holly Springs, Mid-South Mortgage,

8

Laurence Autry, Ann Mays, Mid-South Mortgage and The Money Store d/b/a/ Greentree are associated one with the other by virtue of their relationship as financing entities and/or agents, employees. Together these entities and/or people form an association.

**35.** The defendants above listed form an association in fact for the purpose of racketeering and defrauding the plaintiffs. This association in fact was an enterprise within the meaning of RICO, 18 U.S.C.S. 1961(14).

**36.** At all relevant times the individuals above listed participated directly or indirectly in the conduct of the enterprises affairs through a pattern of racketeering activity within the meaning of RICO, 18 U.S.C.S. 1962©.

**37.** That said actions of the defendants, were intended to defraud the plaintiffs by use of the mail and wire more specifically set forth herein:

    a. Failure to provide market value cost for 25 acres of marketable timber land through use of the mails or electronic wire;

    b. knowing conspiracy to devalue land through use of the mails or electronic wire;

    c. knowing release of funds by bank to persons not authorize to receive through use of the mails or electronic wire;;

    d. knowing misrepresenting that plaintiff received funds from bank on a valid promissory note through use of the mails or electronic wire;;

e.  knowing misrepresentation in application for loan through use of the mails or electronic wire;;

f.  knowing forgery of signature on successive promissory notes entered into with Laurence Autry and Bank of Holly Springs and unknown individual through use of the mails or electronic wire;

g.  fraudulent transfer to alleged bona fide purchaser for value without notice by Diversified Capital Corporation to DLJ Mortgage Capital Inc. in order to remove property from being re-conveyed upon proof of fraud through use of the mails or electronic wire;

h.  knowing involvement of MidSouth Mortgage Company to defraud the plaintiff into refinancing the loan with Diversified Capital Corporation through use of the mails or electronic wire;

i.  knowing taking of property from individual whom they knew was not capable of understanding the terms nor read the contract conveying the property through use of the mails or electronic wire;

j.  utilizing the land as collateral for a loan which the plaintiff did not contract for in order to justify the loan on a under collateralized loan through use of the mails or electronic wire;

38.  DJI Mortgage Capital , Inc. Diversified Capital Corporation of Tennessee; Home Land Title; Bank of Holly Springs, Mid-South Mortgage, Laurence Autry, Ann Mays, Mid-South Mortgage and The Money Store d/b/a/ Greentree by and through its agents, assigns and associates, and others

acted to take the property of the plaintiff through fraud utilizing the mails and wire on more than two separate occasions.

39. Said action of the defendants' affected interstate commerce.

40. The acts of racketeering activity referred to in the previous paragraphs constituted a pattern of racketeering activity within the meaning of 18 U.S.C.S. 1961. The acts alleged were related to each other by virtue of a common participant, a common victim, a common method of and the common purpose and common result of the scheme to deceive, defraud and deny the plaintiff a right to contract. The plaintiff suffered damages as a result of the individual and collective acts of the defendant in an amount to be determined at trial and believed to be in excess of 10 million dollars.

41. Pursuant to RICO, 18 U.S.C.S. 1964 c , the Plaintiff is entitled to receive threefold its damages, plus cost and attorney fees from the defendant.

## CONSPIRACY

42. The plaintiff restates paragraphs 1-159 as if fully copied herein.

43. At all relevant times the plaintiff, Irene Jones was a person within the meaning of RICO, 18 U.S.C.S. Section 1961 (3) and 18 USCS 1964 ( c ) as herein stated.

11

44. At all relevant times the defendants were persons within the meaning of RICO, 18 U.S.C.S. Section 1961 (3) and 18 USCS 1964 ( c ) as herein stated.

45. At all relevant times the defendant formed an association in fact for the purpose of defrauding the Plaintiffs. This association in fact was an enterprise with the meaning of RICO, 18 U.S.C.S. 1962 ( c ).

46. At all relevant times, this enterprise was engaged in and its activities affected interstate commerce within the meaning of RICO, 18 U.S.C.S. 1962 (c )

47. The plaintiff restates all previous and subsequent paragraphs which details the act for fraud and the method of commission by way of mail, wire and/or extortionate transactions.

48. As a result of the conspiracy the defendants are liable to the plaintiff for damages suffered and believed to be in excess of ten million dollars.

49. Pursuant to RICO, 18 U.S.C.S. 1964 (c ) , the plaintiffs are entitled to recover threefold its damages plus costs and attorney fees.

## STATE LAW CLAIMS

### FRAUD

### THE MONEY STORE

50. The plaintiff restates paragraphs 1 through as if fully stated herein.

51. The Money Store prepared a deed of trust wherein they knew that the land utilized as collateral was not owned by the individual identified as Irene Jones and whose home was located at a totally different location.

52. That despite this knowledge the Money Store placed a lien upon the property of the plaintiff described in paragraph 5.

53. The use of the plaintiff's land for a promissory note signed by a totally different Irene Jones was false.

54. The defendant, the Money Store, knew or should have known that the representation was false and/or was made with reckless disregard for the truth. That the defendant, Money Store made the representation knowing that the deed of trust would be recorded as same and that in the event of default that the representation would be acted upon;

55. That the plaintiff suffered injury in the form of wrongful collateralization of the loan for another's debt and the subsequent entanglement of the plaintiff in the litigation of the Money Store thereby eventually resulting in foreclosure.

**FRAUD**

**ANN MAYS and MID SOUTH MORTGAGE**

56. The plaintiff restates paragraphs 1 - 56 as if fully copied herein

13

57. The plaintiff asserts that Ann Mays is the owner/operator of MidSouth Mortgage.

58. That Ann Mays/ Mid South Mortgage approached the plaintiff about securing a loan to fix up her home.

59. Initially the cost was only to be $6,000.00. That Ann Mays/ Mid South Mortgage contacted Laurence Autry as the contractor. He and the plaintiff went to the Bank of Holly Springs to secure a loan. Allegedly the plaintiff only signed one promissory note with the Bank of Holly Springs with Laurence Autry as co-signer.

60. That based upon information and belief, Ann Mays, Mid South Mortgage and Laurence Autry conspired to obtain over $43,000.00 in funds from the account of Irene Jones.

61. That Ann Mays, Mid South Mortgage nor Laurence Autry provided craftsmen who completed the work and in no ways invested $43,000.00 worth of work into the repair of the plaintiff's home.

62. That Ann Mays/ Mid South Mortgage knew that the assertion that money would be obtained to repair her home for $6,000.00 was false. Ann Mays / Mid South Mortgage knew that the construction loan for applications to proceed to the repair of the plaintiff's home was false.

63. The statements to the plaintiffs were false and made with reckless disregard for the truth. Ann Mays/ Mid South Mortgage made this statement hoping that the plaintiff would act in reliance thereof. The plaintiff did act by signing the first promissory note allowing for a construction loan for $6,000.00.

64. Thereafter in continuation of the conspiracy, Ann Mays acted as broker of the loan to Diversified Capital Corporation for $48,000.00 and Laurence Autry as appraiser.

65. Ann Mays/ Mid South Mortgage knew that the plaintiff was unable to determine the business content of any of the agreement which she signed. Further Ann Mays/MidSouth Mortgage knew that she and Laurence Autry had pilfered the money of the plaintiff and provided no services in return and sought to remove the loan from the Bank of Holly Springs before the acts were discovered.

66. Ann Mays/Mid-South Mortgage instructed the plaintiff to sign all of the documents. It was only after the application was read by a third party to the plaintiff that it was discovered that Ann Mays had misrepresented income for the plaintiff which she did not possess.

67. That Ann Mays/Mid South Mortgage made the representation with the intent that it should be relied upon by the plaintiff and third parties.

68. Said representation regarding the employment of the plaintiff and the failure to disclose the underlying arrangement between Ann Mays and Laurence Autry to the plaintiff involving the property was done so that the plaintiff would trust in the action of Ann Mays and Mid-South Mortgage Company to her detriment.

69. The plaintiff so relied and suffered damages more specifically set forth in the paragraph marked damages.

70. The plaintiff suffered injury for which she seeks damages.

## FRAUD

### LAURENCE AUTRY

71. The plaintiff restates paragraphs 1 - 69 as if fully copied herein.

72. That Laurence Autry made a material representation to the plaintiff, Irene Jones that he would use the funds from the promissory note of $6,000.00 to repair her home.

73. That Laurence Autry failed to notify the plaintiff that he had obtained over $43,000.00 in monies under the pretense of constructing/repairing her home.

74. That the plaintiff believes that Laurence Autry may have taken advantage of the mental disability of the plaintiff and obtain her signature or that Laurence

Autry in conjunction with an unknown individual obtain additional funds from the bank without her knowledge and signature. The plaintiff denies that she signed any other document for money for Laurence Autry other than the initial promissory note.

75. That the plaintiff never received construction to her home valued at $43,000.00 or thereabout.

76. That the plaintiff was never informed by Mr. Autry that he had obtained further money from the bank.

77. That the plaintiff was unaware that Laurence Autry also participated as an appraiser on the loan to Diversified Capital Corporation.

78. That the plaintiff relied upon the representation that he would repair her home for $6,000.00 and that he would be honest in his dealings with her.

79. That the misrepresentation was false and relied upon by the plaintiff

80. The plaintiff suffered damages more fully set forth in the paragraph marked damages.

**FRAUD**

**BANK OF HOLLY SPRINGS**

81. The plaintiff restates paragraphs 1-80 as through fully copied herein

82. The plaintiff asserts that she signed the originally promissory note and that she signed no further notes.

83. That each of the promissory notes states that the plaintiff received varying amount eventually totaling $43,000. However on each said date, the plaintiff received no money.

84. The bank unlawfully released all money to Laurence Autry made payable only to Laurence Autry without the plaintiff's knowledge and consent and without any authorization to release said money. All checks were made payable only to Laurence Autry and did not include the plaintiff's name.

85. The bank knew that they had no authority to release funds to Laurence Autry without the consent of the plaintiff and misrepresented at the time of the contract that the funds had been release to the plaintiff; yet the records reveal that said release was only to Mr. Autry.

86. The bank knew or should have known that the plaintiff did not possess the requisite mental ability to contract and acted in disregard of the disability of the plaintiff and in derogation to their fiduciary duty.

87. The bank further failed to reveal to the plaintiff orally their intent to release all money without the knowledge or consent of the plaintiff. That the bank had a fiduciary duty to the plaintiff to ensure that the funds were properly released and failed to so act. The plaintiff relied upon the imposed duty upon the plaintiff and suffered damages more specifically set forth in the paragraph marked damages.

## FRAUD

## HOME LAND TITLE

88. The plaintiff restates paragraph 1-87 as if fully copied herein.

89. The plaintiff asserts that Home Land Title by and through their closing attorney, knew or should have known that the plaintiff was mentally incompetent to transact business and that the contract was voidable in its inception.

90. Further Home Land Title, by and through its counsel knew or should have known that Laurence Autry was co-signed on the loan being capitalized by Diversified Capital Credit Corporation and that Laurence Autry pursuant to his duty as a licensed appraiser had an interest in the property.

91. Further Home Land Title knew that the valuation received for the property was substantially devalued to the point of being fraudulent.

19

92. That despite the knowing held by Home Land Title, the loan was closed to the detriment of the plaintiff

93. That the plaintiff suffered damages as a result of the ongoing ring of fraud perpetrated by Home Land Title.

94. The plaintiff seeks damages more specifically set forth in the paragraph marked damages.

## FRAUD

## DIVERSIFIED CAPTIAL CORPORATION OF TENNESSEE

## DJI MORTGAGE CAPITAL, INC.

95. The plaintiff restates paragraph 1 - 95 as if fully copied herein.

96. The plaintiff states that the defendant Diversified Capital Corporation knew or should have known that the transaction wherein 25 acres of timber land was being sold for $49,000.00 was mired in fraud and failed to act to correct what they knew or should have known was a ring of fraudulent activity.

97. That based upon information and belief, the plaintiff asserts that DJI is not a bona fide purchaser for value without notice and that DJI is another arm of Diversified Capital Corporation designed to remove any taint of fraud and obtain a taking of the property without notice of fraud or other wrongs.

98.  That during the period wherein the plaintiff ceased making payments, Diversified Capital Corporation did not properly services the loan

99.  That due to the failure of Diversified Capital Corporation to act in accordance with its duty that the plaintiff has suffered damages mores specifically set forth in the paragraph marked damages.

100.  On or about august 8, 2003 , Diversified Capital Corporation without properly servicing the loan, foreclosed upon the property of the plaintiff. The plaintiff unable to decipher the action, was informed at the time of a scheduled eviction of the foreclosure.

101.  The plaintiff filed for chapter 13 protection in Tennessee and subsequently in Mississippi. Said petition was dismissed for failure to pay the filing fees.  Eviction proceedings are scheduled for November 23, 2004 in Marshall County, Holly Springs, Mississippi for which the plaintiff seeks a restraining order.

102.  Thereafter the property was transferred to DJI MORTGAGE INC. a subsidiary or agent of Diversified Capital Corporation.

## NEGLIGENCE

## MARK HUTCHINSON

102.  The plaintiff restates paragraph 1 -101 as through as if fully copied herein.

That Mark Hutchinson, along with a firm of lawyers unknown were the attorneys who represented the class of individuals who sued the Money Store. That as a result of said suit, a settlement was reached. During the course of the settlement, Mark Hutchinson, contacted persons who had loans with the Money Store. He contacted Irene Jones as listed on the deed of trust and informed her that she was to receive money damages and to cease further payment of her mortgage.

103. The plaintiff ceased making payments. Thereafter it was later determined that the mortgage was not held by Money Store . Mark Hutchinson eventually came to know that the Irene Jones whom he had instructed to cease from making payments to her mortgage was not the same Irene Jones who actually took out the loan.

104. The plaintiff was never properly instructed concerning the litigation The plaintiff relied upon the assertion of Mark Hutchinson and others. As a result the plaintiff became delinquent in her payments to Diversified Capital Credit Corporation who subsequently foreclosed upon the plaintiff.

105. The plaintiff suffered damages as a result of the breach of duty of Mark Hutchinson to properly investigate the claim of Irene Jones prior to advising her regarding her mortgage. The failure of Mark Hutchinson and others to so act constituted a breach of duty for which the plaintiff suffered damages.

106. The plaintiff seeks damages more specifically set forth in the paragraph marked damages.

## DAMAGES

107. The plaintiff restates paragraphs 1-106 as if fully copied herein.

108. That plaintiff stated that he has suffered actual damages for which he seeks compensatory/actual damages.

109. The plaintiff states that the acts of the defendants individually and collectively were extremely outrageous, malicious, fraudulent, deceitful and oppressive so as to warrant the immediate imposition of punitive damages and/or statutory damages in the amount of 30 million dollars.

EXHIBITS IN SUPPORT THEREOF

110. The plaintiff restates paragraph 1-109 as if fully copied herein.

111. The attached documents identified as Collective Exhibit "A" represent the deed of trusts and land transactions of the identified property.

112. The attached documents identified as Collective Exhibit "B" represent the Promissory Notes, General Debit Entry, and Copy of Disbursement to Laurence Autry of the Bank of Holly Springs.

113. The attached documents identified as Collective Exhibit "C" represent the Uniform Residential Loan Application prepared for Irene Jones by Mid South Title.

23

114. The attached documents identified as Collective Exhibit "D" represent the Settlement Sheet showing payouts to Laurence Autry as appraiser and to Mid-South Title Company.

## PRAYER FOR RELIEF

Wherefore premises the Plaintiff prays for judgment in its favor:

1. Award the plaintiff damages, including compensatory, treble and punitive damages and/or statutory damages, as well as prejudgment and post judgment interest in an amount to be determined at trial.

2. Award the plaintiff injunctive relief to stop all actions to foreclose or take the property and for an order setting aside the foreclosure for fraud.

3. For cost, expenses and attorney fees and other cost incurred in prosecuting this action.

4. Award Plaintiff compensatory/actual damages in an amount not less than 30 million dollars.

5. Grant and award of exemplary damages in the amount of 30 million .

6. Award plaintiff treble damages where mandatory and appropriate as provided in 18 U.S.C.S. 1964 et.Al.

7. Grant to plaintiff a declaratory judgment to the effect that the defendants activities constitutes a per se violation of Federal law.

8. Grant temporary, preliminary and permanent injunctive relief in the form of an order mandating that the individuals disband and halt the conspiracy and racketeering enterprise and association in fact.

9. Grant such other and further relief as this Court deems fair, necessary equitable and just.

**DEMAND FOR A JURY TRIAL**

Pursuant to local rule 13, the Plaintiffs hereby demand a jury trial as provided in Rule 38 of the FRCP pursuant to the 7th Amendment to the United States Constitution.

Dated: November 22, 2004

Wanda Abioto
155 Stateline Road
Suite 1
Southaven, MS 38671
(662) 280-0006
MSB 8156

**ACKNOWLEDGEMENT**

I, IRENE JONES, after being properly sworn and deposed state the following under oath:

That the complaint was read to me in the presence of my son, Robert Jones.

That it is true and correct to the best of my knowledge and belief.

Dated: November 22, 2004

IRENE JONES

STATE OF MISSISSIPPI
COUNTY OF ~~MARSHALL~~
Lafayette
SWORN TO AND SUBSCRIBED BEFORE ME THIS THE ~~22ND~~ 23RD DAY OF NOVEMBER, 2004

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES JAN 4, 2008
BONDED THRU STEGALL NOTARY SERVICE

NOTARY PUBLIC

25